UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEANN CUSHMAN,

        Plaintiff,

    v.                          ORDER

CITY OF TROUTDALE, JAMES E.        Civil No.  07-0012-HU
LEAKE, and MULTNOMAH COUNTY,

        Defendants.

HAGGERTY, District Judge:

Magistrate Judge Hubel referred to this court a Findings and Recommendation [85] in

this matter.  The Findings and Recommendation recommends denying defendant Multnomah

County's Motion for Summary Judgment [54] and granting, in part, the Motion for Summary

Judgment [49] filed by the City of Troutdale and James Leake.  Specifically, the Findings and

Recommendation recommends the dismissal of plaintiff's 42 U.S.C. § 1983 claim against Leake.

**<u>STANDARD</u>**

1 - ORDER

When a party objects to any portion of a Findings and Recommendation, the district court must conduct a *de novo* review. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

**BACKGROUND**

The following facts are drawn from the Findings and Recommendation.

In 2005, plaintiff was dating Michael Ramirez (aka Michael Wilson). Ramirez was on post-prison release after a 2001 conviction for fourth degree assault of a former girlfriend. Ramirez was under the supervision of Multnomah County Parole and Probation and his probation officer was Erick Montgomery.

On September 23, 2005, Ramirez hit plaintiff in the face and drove off in an automobile registered to plaintiff's mother, Julie Kenney. Plaintiff and Kenney went to the Troutdale Police Department and had a conversation with James Leake, a Troutdale Police Department lieutenant. Plaintiff said that she wanted to press charges against Ramirez for the assault. Leake has testified that Kenney asked him to contact Ramirez's probation officer and inform him of the new charges.

Defendants dispute whether Leake contacted Ramirez's probation officer. Leake testified "that he called a central Multnomah County Parole and Probation office number and left a message for Erick Montgomery." Findings and Recommendation at 9. Leake, however, testified that he did not know the telephone number he called or where he got the number, nor did he remember the voicemail greeting he heard when he called. Montgomery and the receptionists answering the phone at the County's office deny receiving a call from Leake.

Leake went on vacation September 25, 2005, and did not return to the office until October 12, 2005. He did not tell plaintiff or Kenney that he was going out of town and he did not change his voice mail message to inform callers that he was unavailable.

2 - ORDER

On October 8, 2005, Ramirez telephoned plaintiff and asked to come to her apartment to claim some clothing he had left there.  Plaintiff "invited Ramirez into her apartment, where they ate a meal, drank beer and tequila together, and watched a movie."  *Id*. at 11.  Although plaintiff suspected that Ramirez was under the influence of methamphetamine, she did not leave the apartment or call the police.  At around 9:30 p.m., Ramirez suddenly attacked plaintiff with a knife, stabbing her and cutting her throat, before fleeing the scene.

Plaintiff contends that the factual summary in the Findings and Recommendation misrepresented two crucial facts.  First, plaintiff alleges that Leake told plaintiff and Kenney when he met with them "that *he* would contact Montgomery and refused her offer to call."  Pl.'s Objections at 2.  Second, plaintiff contends the Findings and Recommendation erroneously indicated that Leake tried to run a records check for "Michael Wilson" immediately after he met with plaintiff and Kenney.

**DISCUSSION**

Plaintiff brings state law negligence claims against Multnomah County (the County) and the City of Troutdale (the City).  Plaintiff has also asserted a § 1983 claim against Leake, alleging that Leake's actions violated her right not to be deprived of a liberty interest without due process of law.  The Findings and Recommendation denied defendants' motions for summary judgment as to the negligence claims, but recommended dismissing plaintiff's due process claim.


1.      **Negligence Claim Against the County**

Plaintiff claims the County was negligent because it did not take Ramirez into custody before he attacked her on October 8, 2005.  Plaintiff contends that the County either knew or should have known that Ramirez assaulted her in September 2005.  In response, the County argued that it was unaware of the September 2005 assault because it never received a call from

3 - ORDER

Leake, the City employee who told plaintiff he would contact Ramirez's probation officer.

Rejecting the County's argument, the Findings and Recommendation concluded that:

> The flaw in the County's argument is its assumption that Leake did not make the phone call to Montgomery.  This is a disputed fact.  If a jury found that Leake did leave a message for Montgomery, the jury could also reasonably conclude that the County was negligent, either by not ensuring that Montgomery got the message or because Montgomery failed to respond to the information and obtain an arrest warrant.

Findings and Recommendation at 14.

In its objections, the County again argues that there is insufficient evidence to support the inference that Leake called the County and left a voicemail.  Although the County supports its position with a number of facts, summary judgment is inappropriate when different ultimate inferences may be drawn from the evidence.  *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).  Here, Leake has testified that he called the County and left a message for Montgomery.  This testimony – in and of itself – is sufficient to create a triable issue of fact.

The County also argues that plaintiff's "failure to report Ramirez's whereabouts on October 8, 2005, deprived the County of an opportunity to arrest or detain him."  Def. Multnomah County's Objections at 7.  Since plaintiff knew that Ramirez was going to visit her apartment and did not contact the police, defendant argues that any inaction by the County was not the "but for" cause of plaintiff's injuries.

This court disagrees.  Although plaintiff's failure to contact the police constitutes a "but for" cause of her injuries, the County's alleged failure to respond to Leake's voicemail message also constitutes a "but for" cause:  Had the County responded to Leake's message and taken Ramirez into custody, plaintiff could not have been attacked on October 8, 2005.

Although presented as an issue of causation, the County's argument is more properly

4 - ORDER

construed as one of contributory negligence. At its essence, defendant is arguing that any

negligence by the County is negated by plaintiff's subsequent failure to contact the police after

learning that Ramirez was coming to her apartment. Oregon, however, has abolished the

contributory negligence standard and replaced it with a comparative fault system. Oregon

Revised Statutes 31.600. As mentioned above, summary judgment is inappropriate when

different ultimate inferences may be drawn from the evidence. Given the evidence of possible

negligence on the part of both the County and plaintiff, reasonable minds could differ regarding

the County's comparative negligence. Because apportioning relative fault in a negligence action

is typically a question of fact for the jury, the Findings and Recommendation correctly denied

the County's motion for summary judgment.

### 2. Negligence Claim Against the City

The Findings and Recommendation also concluded that there was evidence supporting

plaintiff's negligence claim against the City:

> A reasonable jury could find that the harm to Cushman was foreseeable, given
> Leake's assurance that he would call Montgomery, his failure to tell Cushman that
> he was leaving for a two week vacation during which he would be unreachable,
> and his failure to ensure, before leaving, that Ramirez would be arrested.

Findings and Recommendation at 26. In its objections, the City argues that the harm to plaintiff

was not foreseeable because "there was never any information given to Leake that Ramirez was

a more violent person beyond that he had slapped Cushman in the face after a Friday night of

drinking." City of Troutdale Defs.' Objections at 2.

This court does not agree that foreseeing the harm to plaintiff required "super-human

premonition skills." *Id*. at 3. Although Leake was unaware of the exact crime for which

Ramirez was on probation, he was aware that Ramirez had committed a probation worthy

offense. Despite this knowledge, it is disputed whether Leake ever ran a background check on

Ramirez.  In addition, Leake knew the name of Ramirez's probation officer and told plaintiff he

would call Montgomery; however, it is disputed whether Leake ever called Montgomery and it is

undisputed that Leake never actually spoke with him.  Common sense suggests that a brief

conversation with Montgomery would have revealed that Ramirez had a history of violence

towards women.  Finally, plaintiff has introduced evidence that police department policies

regarding domestic violence victim assistance were not followed.  Based upon these facts, a

reasonable jury could conclude that Leake should have acted differently, even if he was unaware

of Ramirez's criminal background.

### 3.    Due Process Claim Against Leake

Plaintiff has also brought a due process claim against Leake.  In general, the state is not

liable for its omissions.  *See DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S.

189, 195 (1989).  In *DeShaney*, the Supreme Court clarified that:

> nothing in the language of the Due Process Clause itself requires the State to
> protect the life, liberty, and property of its citizens against invasion by private
> actors.  The Clause is phrased as a limitation on the State's power to act, not as a
> guarantee of certain minimal levels of safety and security.

489 U.S. at 195.

One exception to the general rule that a state's failure to protect an individual from

danger does not constitute a violation of the Due Process Clause is the "danger creation"

exception, which "exists where the state affirmatively places the plaintiff in a dangerous

situation."  *See Huffman v. County of L.A.*, 147 F.3d 1054, 1059 (9th Cir. 1998); *also Kennedy v.

City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).  To qualify for this exception, Ninth Circuit

courts have required an "*affirmative act* by the police that leaves the plaintiff 'in a more

dangerous position than the one in which they found him.'"  *Estate of Amos ex rel. Amos v. City

of Page, Ariz.*, 257 F.3d 1086, 1091 (9th Cir. 2001) (quoting *Penilla v. City of Huntington Park*,

115 F.3d 707 , 710 (9th Cir. 1997)).  In addition to affirmatively placing an individual in danger,

courts in the Ninth Circuit require proof that a state actor acted with "deliberate indifference" to

the danger they created.

### a.      Affirmative Act

The Findings and Recommendation reasoned that:

> A reasonable jury could conclude that Leake affirmatively put Cushman at risk
> for harm by assuring her that he would call Montgomery, possibly failing to do
> so, then leaving for a two week vacation without following up with Montgomery
> and without leaving Cushman a means of contacting him or some other informed
> person within the police department.

Findings and Recommendation at 24.

In its objections, the City argues "that the mere failure to contact a suspect's parole

officer could [not] possibly come within the narrow exception mentioned" by the Supreme Court

in its *Deshaney* opinion.  City of Troutdale Defs.' Objection at 2.

The Findings and Recommendation contains a thorough discussion of relevant Ninth

Circuit case law.  *See* Findings and Recommendation at 20-24.  Although the Findings and

Recommendation properly set forth the controlling legal authority,[1] this court does not agree that

Leake's failure to contact Montgomery qualifies as an affirmative act of "danger creation."

The Findings and Recommendation relied upon *Kennedy v. City of Ridgefield*.  In

*Kennedy*, the plaintiff went to the police to report that Burns, a neighbor, had molested her

daughter.  439 F.3d at 1057.  The plaintiff told a police officer named Shields that her neighbor

was unstable and violent.  *Id*. at 1058.  Shields told the plaintiff she would be notified before the

---

[1] Defendants argue that the Magistrate Judge erred by not evaluating the Third Circuit case
of *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006).  An Oregon federal court is not
required to consider out-of-circuit authority, particularly when there is ample Ninth Circuit
authority that directly addresses a legal issue.  *See Int'l Chem. Workers Union Council v. NLRB*,
467 F.3d 742, 748 n. 3 (9th Cir. 2006) ("[T]hose cases are out-of-circuit authority, which are not
binding on us.")

police contacted Burns. *Id.* Despite this assurance, Shields contacted Burns' mother and informed her of the plaintiff's allegations. *Id.* When the plaintiff learned that Shields had contacted Burns' mother, she expressed concerns for her safety. *Id.* Shields assured the plaintiff that the police would patrol the area around her house to watch for Burns and, based upon these assurances, plaintiff stayed at home. *Id.* Burns broke into the home and shot both plaintiff and her husband in their sleep. *Id.*

Plaintiff contends that Leake assured her that he would call Montgomery and that she should not contact Montgomery herself, thereby creating the same false sense of security created by Shields in *Kennedy*. In *Kennedy*, however, the state created the danger to the plaintiff when:

> Shields drove to the Burns residence and notified the Burns family of the allegations against Michael [Burns]. In doing so, he affirmatively created a danger to [plaintiff] she otherwise would not have faced, i.e., that Michael Burns would be notified of the allegation before the Kennedys had the opportunity to protect themselves from his violent response to the news.

*Id.* at 1063. Although the police officer in *Kennedy* told plaintiff she would be safe in her home, the Ninth Circuit did "not rest [its] judgment that Shields affirmatively created a danger on that assurance alone . . . [although] Shields's misrepresentation as to the risk the Kennedys faced was an additional and aggravating factor, making them more vulnerable to the danger *he had already created*." *Id.* (emphasis added).

Consistent with *Kennedy*, other Ninth Circuit courts have required proof that the state actor created the danger. *See Munger v. City of Glasgow*, 227 F.3d 1082 (9th Cir. 2000) (holding police officers could be held liable for the death from hypothermia of a visibly drunk patron they had ejected from a bar on an extremely cold night); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (holding as viable a state-created danger claim against police officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992)

8 - ORDER

(holding state employees could be liable for the rape of a registered nurse assigned to work alone with a known, violent sex-offender); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (holding state could be liable for the rape of a woman that an officer had left stranded in a known high-crime area late at night).

In every case involving state-created danger, the state actor played a significant role in creating the dangerous situation: whether by revealing the plaintiff's allegations to the neighbor in *Kennedy*, ejecting the drunk patron from a bar in *Munger*, dragging the injured man inside his house in *Penilla*, assigning the nurse to work alone with a known sex-offender in *Grubbs*, or stranding a woman in a dangerous area in *Wood*.  Leake's supposed affirmative acts fall far short of this standard.  Construing the facts in the light most favorable to plaintiff, Leake is guilty of the following: assuring plaintiff that he would call Montgomery, telling plaintiff she did not need to call Montgomery, failing to contact Montgomery, not running a background check on Ramirez, telling plaintiff to investigate areas she thought Ramirez might visit and report his whereabouts, and going on vacation without telling plaintiff or changing his answering machine message.

There is no evidence that plaintiff's injuries were caused by forces that Leake set in motion.  Unlike the officer in *Kennedy*, who created a dangerous situation by revealing the plaintiff's accusations to her neighbor, Leake's conduct did not create a danger that plaintiff did not already face.[2]  Rather, the record clearly indicates that Ramirez – high on methamphetamine and with a history of domestic violence – independently decided to attack plaintiff on October 8, 2005.  Although Leake may have been able to prevent plaintiff's injuries, by either contacting Montgomery or otherwise helping to take Ramirez into custody, Leake's alleged negligence did

---

[2] Although Ramirez suspected that plaintiff was "trying to set him up," he "was not aware that Cushman had reported him to the police."  Findings and Recommendation at 10-11.

9 - ORDER

not create a danger that did not previously exist.  Because plaintiff has not shown an affirmative

conduct that created a danger, plaintiff cannot establish a due process claim.

### b.    Deliberate Indifference

Not only has plaintiff failed to prove "danger creation" by Leake, plaintiff has not

demonstrated that he was deliberately indifferent to a known or obvious danger.

The Findings and Recommendation dismissed the due process claim because plaintiff

"has not, in her brief, challenged the City's assertion that she has not proffered evidence of

deliberate indifference."  Findings and Recommendation at 25.  Although plaintiff admits to

some "inartful briefing," plaintiff argues that the "same acts that created the danger also provide

evidence that Leake acted with deliberate indifference to the known or obvious danger" of an

attack by Ramirez.  Pl.'s Objections at 5.  Specifically, plaintiff argues that:

> Leake was aware of the obvious risk that an offender who had hit his girlfriend
> would likely harm her or try to harm her again; that she would not try to call the
> offender's parole officers due to his reassurances, thereby preventing the
> probation officer from acting; that the parole officer would not get [Law
> Enforcement Data System] notification of police contact with the offender, if he
> did not run a [Law Enforcement Data System] check; that no one would follow up
> on contacting the parole officer when he did not give instructions to another
> officer to do so; and that the offender would continue to remain at large because
> he was not there to apprehend the offender due to his hunting trip when the
> victim's mother called to report where the offender was.

*Id*.

Although this court agrees that plaintiff did proffer evidence relevant to a claim of

deliberate indifference, Leake's conduct does not rise to the level of a constitutional violation.

The Supreme Court has observed that "the Constitution does not guarantee due care on the part

of state officials; liability for negligently inflicted harm is categorically beneath the threshold of

constitutional due process."  *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).  In

*Bryan County v. Brown*, the Court clarified that "deliberate indifference" is a "stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of

10 ORDER

his actions."  520 U.S. 397, 410 (1997).

Plaintiff argues that Leake "knew of the violent propensities of Ramirez" and cites the *Kennedy* decision.  Pl.'s Objections at 6.  In *Kennedy*, the police officer was warned that the plaintiff's neighbor was unstable and violent.  *See* 439 F.3d at 1064 (finding deliberate indifference when the plaintiff "told Shields in detail of Michael Burns' violent tendencies, including several incidents of what can only be described as alarming, aggravated violence, notably, lighting a cat on fire and assaulting his girlfriend with a baseball bat after breaking into her house").  There is no evidence, however, that Leake was actually aware of Ramirez's violent tendencies, other than knowing that Ramirez had struck plaintiff a single time and that he was on probation.

As discussed above, plaintiff has shown that Leake negligently failed to investigate Ramirez's criminal history, by not contacting Montgomery or running a background check. While this failure to discover Ramirez's violent past supports a finding of negligence, the concomitant ignorance of Ramirez's dangerousness is fatal to a finding of "deliberate indifference."  Because Leake never learned that Ramirez had a history of domestic violence, plaintiff has not shown that Leake knew the consequences of his actions.  Plaintiff has also not shown that those consequences were obvious, since Leake only knew that Ramirez had hit plaintiff a single time and that he was on probation for an unidentified crime.  Applying the "stringent standard of fault" required in due process claims, this court concludes that Leake's conduct does not rise to the level of "deliberate indifference."

Because plaintiff has failed to show either "danger creation" or "deliberate indifference" by Leake, plaintiff's due process claim is dismissed.

## CONCLUSION

The court adopts the Findings and Recommendation [85].  The Motion for Summary

11  ORDER

Judgment [54] filed by Multnomah County is DENIED and the Motion for Summary Judgment

[49] filed by the City of Troutdale and James Leake is GRANTED in part, and DENIED in part.


       IT IS SO ORDERED.

       DATED this 30th day of March, 2009.


       /s/ Ancer L. Haggerty
         Ancer L. Haggerty
       United States District Judge

12 ORDER